UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

      v.                                             3:09-CR-447

RUSSELL JENNINGS,

                                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

       Defendant Russell Jennings was indicted on one count of accessing with the intent to view and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Presently before the Court is Defendant's motion to dismiss the Indictment and to suppress certain statements.

**I.**      **FACTS**

       Defendant was convicted of violating 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography). Defendant was sentenced to 21 months incarceration followed by 20 years of supervised release. In April 2008, Defendant was released to supervision. He moved into his brother's residence in Afton, New York. During a mental health counseling session, Defendant admitted engaging in certain conduct. The counselor instructed Defendant to inform the probation officer of the conduct within one week or else she would. In February 2009, Defendant reported to the probation officer that he had been accessing his brother's laptop computer since July 2008 to view child pornography. Defendant also admitted that he unsuccessfully tried to access chat rooms.

The probation officer notified an FBI agent of the information provided by Defendant and also contacted the United States Attorneys Office ("USAO"). The USAO commenced a criminal investigation of Defendant in February 2009. The probation officer, together with the FBI agent, prepared an affidavit in support of the application for a search warrant of Defendant's residence.[1] The USAO prepared and drafted a search warrant and a sealing order. The probation officer and an Assistant United States Attorney appeared before this Court to obtain the warrant. The Court reviewed the supporting information, observed the probation officer sign the supporting affidavit, and issued the warrant.

On February 19, 2009, the warrant was executed by members of the FBI and of the USPO. The FBI agents seized and took custody of certain items. The probation officer briefed an Assistant United States Attorney of the results of the search. The seized laptop computer was delivered by the FBI to the Broome County Security Division for forensic analysis.

On July 10, 2009, Defendant appeared at the USPO for an office visit. The probation officer questioned Defendant concerning the images located on the laptop computer. Defendant admitted accessing and viewing the images.

On August 6, 2009, the probation officer, together with the Assistant United States Attorney, prepared a criminal complaint. On August 7, 2009, Defendant was arrested on the criminal complaint. On August 18, 2009, an Indictment was returned against Defendant charging him with violation 18 U.S.C. § 2252A(a)(5)(B).

---

[1] The Government contends that a search warrant was not necessary because, under the terms and conditions of Defendant's supervised release, he consented to searches of his residence based upon a reasonable suspicion that he violated the conditions of his release or committed a new crime. The Government states that it sought a search warrant out of an abundance of caution because another person resided with Defendant (his brother).

Presently before the Court is Defendants' motion to dismiss the indictment and suppress evidence.

## II.     DISCUSSION

### a.     Whether The USPO Exceeded Its Statutory Authority or Violated the Separation of Powers

Defendant moves to dismiss the Indictment on the ground that the USPO exceeded its authority in investigating Defendant for new criminal conduct, providing an affidavit in support of the search warrant, assisting in the execution of the search warrant, and filing a criminal complaint.

The duties of a probation officer are set forth in 18 U.S.C. § 3603. Those duties include "keep[ing] informed, to the degree required by the conditions specified by the sentencing court, as to the conduct . . . of a probationer or a person on supervised release. . . .," and "keep[ing] informed concerning the conduct, condition, and compliance with any condition of probation. . . ." 18 U.S.C. §§ 3603(2), (7). To fulfill these duties, the probation officer necessarily serves in an investigative role. See United States v. Davis, 151 F.3d 1304, 1306 (10th Cir. 1998) (noting that the probation officer serves as an investigative and supervisory arm of the court); see also Pennsylvania Bd. of Probation and Parole v. Scott, 118 S. Ct. 2014, 2025 (1998) ("Parole officers wear several hats; while they are indeed the parolees' counselors and social workers, they also 'often serve as both prosecutors and law enforcement officials in their relationship with probationers and parolees.'") (quoting N. Cohen & J. Gobert, Law of Probation and Parole § 11.04, p. 533 (1983)).

In this case, all investigative activities by the USPO related to whether Defendant was complying with the conditions of his supervised release. This is within the statutory

duties of a probation officer.  Specifically, the USPO investigated whether Defendant was accessing child pornography in violation of the terms of his supervised release.  That the information obtained by the USPO also supported new criminal charges does not bring the USPO's actions outside the scope of its statutory duties.

The fact that the probation officer may have sought the assistance of the FBI or the USAO or reported the conduct to the USAO does not change the result.  The USAO is permitted to petition the Court for revocation of a defendant's supervised release.  United States v. Bermudez-Plaza, 221 F.3d 231, 234 (1st Cir. 2000) ("[R]evocation hearings are not criminal proceedings and neither the Attorney General nor any other officer is solely responsible for their initiation."); see also United States v. Mejia-Sanchez, 172 F.3d 1172, 1175 (9th Cir. 1999); United States v. Davis, 151 F.3d 1304, 1307-08 (10th Cir. 1998).  Given this authority of the USAO, it is not unreasonable to expect probation officers, as part of their official duties, to share information with the USAO to prepare revocation proceedings. Indeed, there is a statutory basis for a probation officer to report a probationer's conduct to the USAO.  Section 3603(8)(B) requires a probation officer to "immediately report any violation of the conditions of release to the court and the Attorney General or his designee." See Mejia-Sanchez, 172 F.3d at 1174.   Whether the USAO decides to use that same information to commence criminal proceedings is within the sole discretion of the USAO. See Davis, 151 F.3d at 1307 ("[T]he U.S. Attorney retains discretion to file new criminal charges against the defendant arising from the defendant's violation of conditions of release which was criminal in nature. . . .").  Accordingly, the Court finds that the USPO did not exceed its statutory authority.

For similar reasons, the Court also finds that the USPO did not exceed its constitutional authority.  Defendant contends that prosecuting crimes is within the sole province of the executive branch, that it is outside the scope of the judiciary to institute new criminal proceedings, and that the instant matter blurs the roles of each branch because "if the probationer feared that information candidly shared with Probation was going to form the basis of a separate criminal prosecution, the probationer would have no incentive to honestly participate in his own recovery. . . . [and] limiting criminal investigations and the initiation of criminal proceedings to the executive assures that the constitutional rights of a probationer . . . are guarded through the well-established rules of criminal procedure. . . ."

"While 'the separation of governmental power into three coordinate branches is essential to the preservation of liberty,' . . .  the Supreme Court has advised that the separation of powers doctrine does not support 'the notion that the three Branches must be entirely separate.'" United States v. Sczubelek, 402 F.3d 175, 187 (3d Cir. 2005) (quoting Mistretta v. United States, 488 U.S. 361, 380 (1989)).  Thus, assuming, *arguendo*, that the USPO acted beyond its authority, "it does not necessarily follow that there is a separation of powers violation.  There would also have to be an encroachment on the Executive Branch. . . ." Sczubelek, 402 F.3d at 189; see also Mistretta, 488 U.S. at 381.  The Court does not find any such encroachment here.

The USPO's statutory duties of keeping informed of whether a probationer is complying with the conditions of release necessarily overlap some law enforcement duties.  See Scott, 118 S. Ct. at 2025.  That the results of the USPO's duties may have dual uses (*i.e.* forming the basis for a revocation of supervised release and the initiation of new criminal charges) does not run afoul of the separation of powers.  In this case, the undisputed

evidence is that the USAO was involved in the criminal investigation from an early stage. The record evidence is that the USAO: (1) conferred with the USPO concerning obtaining a search warrant; (2) prepared the warrant application based on information obtained from the USPO;[2] (3) presented the warrant to this Court; (4) made the decision to file new criminal charges; (5) made the decision as to which criminal charges to pursue, see Gov't Mem. of Law at 19; (6) prepared the felony complaint, see Lovric Aff. at ¶ 23; (7) filed the criminal charges; (8) presented the matter to a grand jury; and (9) continues to prosecute the charges against Defendant. The probation officer has no role in how the information submitted to the USAO is used by it. See United States v. Hook, 471 F.3d 766, 777 (7th Cir. 2006). Inasmuch as the Executive Branch has been involved from an early stage and has made the critical determinations whether, and how, to proceed with new criminal charges against Defendant, the Court finds no encroachment that violated the separation of powers doctrine. Nothing the USPO did interfered with the Executive Branch's ability to make law enforcement decisions or perform law enforcement functions. See Sczubelek, 402 F.3d at 189.

   **b.   Suppression**

Defendant moves to suppress the results of the search warrant of his residence because the warrant violated Fed. R. Crim. P. 41 and the Fourth Amendment. Defendant contends that the subject search warrant was issued in violation of Fed. R. Crim. P. 41 because the USPO is not a proper applicant for a warrant (thereby violating Rule 41(b)) and is not authorized to execute a warrant (thereby violating Rule 41(e)).

---

[2] As previously noted, the USPO was permitted to investigate Defendant and obtain such information as part of its statutory duties to keep informed of Defendant's conduct and whether he is complying with the terms and conditions of his release. See 18 U.S.C. §§ 3603(2), (7).

1.	Rule 41(b)[3]

Rule 41(b) provides that a warrant may be requested by a federal law enforcement officer or an attorney for the government. The evidence in this case is that, although the supporting affidavit was prepared by the probation officer that had the information necessary to a finding of probable cause, the application was prepared under the supervision of the USAO. Further, the warrant was presented to the Court through an Assistant United States Attorney who qualifies as an attorney for the government within the meaning of Rule 41. The USAO's supervision of the preparation of the supporting affidavit together with the facts that the USAO prepared the warrant and sealing order and accompanied the probation officer to obtain the warrant satisfies Rule 41(b). See United States v. Luk, 859 F.2d 667, 673 (9th Cir. 1988); United States v. Sangineto-Miranda, 859 F.2d 1501, 1514 (6th Cir. 1988); United States v. Schuster, 777 F.2d 264 (5th Cir. 1985), vacated due to the death of defendant, 778 F.2d 1132 (1985); United States v. Gehl, 1994 WL 371329, at *8 (N.D.N.Y. 1994); United States v. Massey, 687 F.2d 1348 (10th Cir. 1982); United States v. Burka, 700 F. Supp. 825, 831 (E.D. Pa. 1988).

Moreover, in light of the fact that Defendant resided with his brother and Defendant was purportedly using his brother's laptop to view child pornography, it was not unreasonable for the USPO to believe it needed a search warrant and to seek assistance from the USAO in that regard. Accordingly, there was no violation of Rule 41(b) warranting suppression.

---

[3] The ensuing analysis assumes, without deciding, that a search warrant was necessary in this case.

### 2. Rule 41(e)

Rule 41(e) requires that the warrant be issued "to an officer authorized to execute it." Here, the warrant was addressed to "Any United States Probation Officer, and any Authorized Law Enforcement Officer . . . ." Defendant argues that Rule 41(e) does not permit a Probation Officer to execute a search warrant relating to the seizure of evidence of separate criminal conduct.

"[A] search warrant may be executed by (1) the person to whom the warrant is directed; (2) any officer authorized by law to execute search warrants; or (3) some other person who is aiding a person under (1) or (2) who is present and acting in the execution of the warrant." 3A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §671; Wilson v. Layne, 119 S. Ct. 1692, 1698 (1999) (presence of third parties may be permissible when they directly aid in the execution of the warrant). Here, the search warrant was executed by the USPO and the FBI. Defendant does not argue that the FBI was not authorized to execute the warrant. Thus, if the USPO provided direct aid in the execution of the warrant, there is no violation of Rule 41(e). The Court finds that, under the facts of this case, the USPO's search was related to its statutory duties and the USPO did provide direct aid to the FBI. Thus, the requirements of Rule 41(e) were satisfied.

### 3. Neutral and Detached Magistrate

Defendant next contends that because "[a]ll aspect of the warrant were controlled by the judiciary" the warrant was not issued by a neutral and detached magistrate. There is no dispute that the USPO played a significant role in learning of and investigating Defendant's conduct. This was entirely within the province of the USPO's statutory duties and obligations in monitoring Defendant's compliance with the terms of his supervised

release.  The USPO was responsible for supervising Defendant and identifying any violations of the terms and conditions of his supervised release.  The conduct identified by the USPO reasonably supported charges that he violated the terms and conditions of his supervised release.  That the same conduct may also support separate criminal charges does not invalidate the USPO's actions.   The USPO referred the criminal matter to the USAO, which commenced a criminal investigation.  It was the USAO that applied for a search warrant.  This Court reviewed the application and issued a warrant.  It is the USAO that obtained an Indictment against Defendant.  It is the USAO that is prosecuting the criminal charges.  Accordingly, there is an insufficient factual basis for Defendant's claim that "[a]ll aspects of the warrant were controlled by the judiciary."

### c.   Motion to Suppress

Defendant next moves to dismiss any statements he made to the probation officer on the ground that they were not voluntary and, therefore, in violation of his Fifth Amendment rights.  The Government responds that Defendant waived the privilege by not asserting it at the time of the interview.

> It is well-settled that the Fifth Amendment
>
> permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.
>
> In all such proceedings, a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant.  Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution

Minnesota v. Murphy, 104 S. Ct. 1136, 1141 (1984) (internal quotation, alteration and citation omitted). "[T]he general obligation to appear and answer questions truthfully" at a probation interview does not convert Defendant's "otherwise voluntary statements into compelled ones." Murphy, 104 S. Ct. at 1142.

> [A] witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself.  If he asserts the privilege, he "may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without at that time being assured that neither it nor its fruits may be used against him" in a subsequent criminal proceeding.  Maness v. Meyers, 419 U.S. 449, 473, 95 S. Ct. 584, 598, 42 L. Ed.2d 574 (1976) (WHITE, J., concurring in the result).  But if he chooses to answer, his choice is considered to be voluntary since he was free to claim the privilege and would suffer no penalty as the result of his decision to do so.

Murphy, 104 S. Ct. at 1143.

There are, however, certain situations where this general rule is inapplicable. Id. at 1143, 1146 ("The general rule that the privilege must be claimed when self-incrimination is threatened has . . . been deemed inapplicable in cases where the assertion of the privilege is penalized so as to foreclose a free choice to remain silent, and compel incriminating testimony.") (internal quotation, alteration and citation omitted).  Thus, where the government "either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." Id, at 1146; see also United States v. Amico, 486 F.3d 764, 789 (2d Cir. 2007).  In, Murphy, the Supreme Court noted that a "State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege" and, therefore, the defendant did not have a reasonable

belief the probation could be revoked for invoking the Fifth Amendment. Murphy, 104 S. Ct. at 1148.

Here, as in Murphy, there is no evidence that Defendant confessed his behavior because he feared that his probation would be revoked if he remained silent. See Murphy, 104 S. Ct. at 1148. Similarly, even if Defendant did have such a belief, it would not have been reasonable because his probation legally could not have been revoked for exercising his Fifth Amendment right. Id. Further, under 18 U.S.C. § 3563, revocation is neither mandatory nor automatic for failure to answer questions.[4] There is nothing before the Court suggesting that Defendant's ability to remain on probation was conditional on his waiving his Fifth Amendment privilege. It, therefore, follows that Defendant was not "deterred from claiming the privilege by a reasonably perceived threat of revocation." Murphy, at 1148. "[S]ince [Defendant] revealed incriminating information instead of timely asserting his Fifth Amendment privilege, his disclosures were not compelled incriminations. Because he had not been compelled to incriminate himself, [Defendant] could not successfully invoke the privilege to prevent the information he volunteered to his probations officer from being used against him in a criminal prosecution." Murphy, at 1149.

---

[4] Pursuant to 18 U.S.C. § 3565(a), "[i]f the defendant violates a condition of probation at any time . . . the court *may*, after a hearing . . . and after considering the factors in section 3553(a) . . . (1) continue him on probation, with or without extending the term or modifying or enlarging the conditions; or (2) revoke the sentence of probation and resentence the defendant. . . ." Revocation is mandatory only in the circumstances set forth in § 3565(b) (possession of controlled substances, possession of a firearm, failing to comply with drug testing, and testing positive for illegal drug use), which are inapplicable here.

### III.     CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED IN ITS ENTIRETY. The government has cross-moved for reciprocal discovery. Defendant shall comply with his Rule 16 obligations forthwith.

IT IS SO ORDERED.

Dated: November 23, 2009

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge